Clason v. Clason.

---

W. O. & J. CLASON, *appellants*, and A. W. CLASON, *respondent.* [369]

Where a testator, after the expiration of twenty years from the time of his decease, devised certain real estate to three sons, *equally to be divided between them*, and directed if either of them should die *before such division should be made*, without leaving lawful issue, that his portion should belong to the survivor or survivors, *it was held*, that *on the expiration of the twenty years*, the sons of the testator severally took *an absolute estate* in the property devised, and that the death of one of them after the expiration of the twenty years, *before the making of an actual division* of the property, did not *divest* the estate, but that the same inured to the benefit of a purchaser to whom, previous to his death, he had conveyed the property.

### Clason v. Clason.

APPEAL from chancery. In this case, a bill in chancery was filed for the *partition* of a farm, to which the parties claimed title under the will of Isaac Clason, made 26th September, 1810. The testator, after making certain bequests to his wife, and other provisions for her maintenance, and after a bequest to a married daughter and declaring his intention that in no event such daughter or her children should *inherit* any portion of the real estate by his will thereafter devised, or be considered a representative of any of his other children, so as to be entitled to receive any portion of his real or personal estate, except that which he had expressly given her by his will, made the following devise: "I give, devise and bequeath to my *three* sons, *William Jones Clason, Isaac Starr Clason,* and *Augustus Washington Clason,* the survivors and the survivor them, the rents, issues, and profits of all my real estate in the county of Westchester, for the term of twenty years after my decease, subject to the claims of my said wife as hereinbeforestated, the said rents, issues, and profits to be divided equally between my said sons and the survivors of them; and if any of my said sons shall die before the expiration of the said term of twenty years, leaving a lawful child or children, such child or children *shall* be entitled to and receive such portion of [370] the said rents, issues and profits, as would have belonged to his, her or their father, if living; and *after the expiration of the said term of twenty years,* I give, devise, and bequeath all my real estate in the county of Westchester, to my said three sons, their heirs and assigns forever; *equally to be divided between them;* and if any of my said sons shall die *before a division shall be made,* leaving a lawful child or children, such child or children shall be entitled to and receive *such* portion of the said estate as his, her or their father would have been entitled to if living; and if any of my said sons shall die *before such division shall be made,* without leaving any lawful child or children, him or them surviving, the portion of such son or sons so dying, shall belong to the survivors or survivor of my said three sons, their or his heirs and assigns forever." The testator died on the 1st March, 1815, leaving his three sons named in the will, living. *William Jones Clason* died in 1824, who devised his property to the appellants. *Isaac Starr Clason* died 14th March, 1835, intestate, and *without issue, thirteen days after the expiration of the twenty years* mentioned in the will, and *Augustus Washington Clason* survived both his brothers. Previous to his death, Isaac Starr Clason, by deed bearing date 29th April, 1820, conveyed all his *interest* in the premises to one Lockwood, from whom by sundry mesne conveyances, the interest thus conveyed came to *Augustus Washington Clason,* who filed the bill for partition, claiming to be the owner of *two thirds* of the farm, and stating that the appellants were the owners of the remaining *one third,* which they held as tenants in common. A master, in pursuance of an order, reported that he found the rights and interests of the parties to be as stated in the bill, and the chancellor confirmed the report in that respect. See the opinion of the chancellor, (6 *Paige's R.* 543.) From the decree of the chancellor confirming the report, the defendants in the partition suit appealed to this court, where it was insisted in their behalf, 1. That *Isaac Starr Clason* took under the will of his father only a *qualified fee* at the end of the twenty years, with an executory devise over, in the event of his dying *before a division actually made;* and 2. That *Isaac Starr Clason* having died without issue, *before a division actually made,* the appellants are entitled to stand in the place of their [371] father, *William Jones Clason,* and share the portion of *Isaac* with the respondent, in the same manner that their father would have done had he been living at the death of Isaac.

The cause was argued in this court by
S. A. *Foot,* for the appellants.
G. *Wood,* for the respondent.
After advisement, the following opinion was delivered:
By Justice BRONSON. 1. I think *Isaac Starr Clason* took an absolute fee at

Clason v. Clason.

the end of the term of twenty years from the death of the testator; that by the words, "before a division shall be made," and "before such division shall be made," in the clauses which dispose of the estate in the event of the death of one or more of the sons, the testator did not intend an actual partition of the property, but referred to the time which he had already appointed for making the division. He first disposes of the rents and profits for the term of twenty years, and at the expiration of the term he devises the estate to his three sons, in fee, "equally to be divided between them." But inasmuch as one or more of the devisees might die before the time appointed for making the division, he proceeds to declare what disposition shall be made of the property in that event; and gives the portion of any son so dying, to his children, should he leave any, and if not, to the surviving son or sons.

I can see no reason for supposing that the testator, after having restrained the power of alienation for twenty years, intended to restrict it still further, and make the right to an absolute fee depend on the fact of an actual partition. On the contrary, I think he intended that such of the sons as might survive the term, should then take an unconditional fee, with the power of disposing of the estate at pleasure. If this is the proper construction of the will, it is not denied that the respondent is entitled to the portion of *Isaac*, as a purchaser.

2. If, as the appellants contend, the right to an absolute fee depended not only on the lapse of the term, but an actual division of the property, I [372] should still be of opinion that the decree is right. *Isaac* died without issue, and under the limitation over in the will on such an event, his portion belongs to the respondent as the only surviving son of the testator. The language of this clause is plain and explicit. The testator declares, that if any of the sons shall die before a division, without leaving children, "the portion of such son or sons so dying, shall belong to the *survivors* or *survivor* of my said three *sons*, their or his heirs and assigns forever." The persons to take, are not children of deceased sons, but the sons themselves.

The clause which precedes this, gives to the children of any son dying before a division, such portion of the estate as their father would have been entitled to if living. This clause has already performed the office which it was designed to answer by giving the portion of *William Jones Clason*, who died in 1824, to his children, the appellants. The words, "such portion," in this clause, may, I think, refer to the original share, or one third part of the estate given to each of the sons; and the words "if living," may refer to the time appointed by the testator when the sons were authorized to take and divide the property. On this construction the two provisions will be in perfect harmony. In substance they amount to this: the original portion which each son would take if living at the end of the term, shall, in case of his death before a division, go to his children, if he leave any; and if he leave no children, it shall go to the surviving son or sons. If we give the language a broader construction, and say that the children of a deceased son are entitled to all that their father would have taken had he been now living, we shall bring the first clause into direct conflict with that which provides for the right of survivorship among the sons.

The clause providing for survivorship will not admit of two constructions. If any of the sons die before a division, without issue, "the portion of such son or sons so dying, shall belong to the survivors or survivor of any of my said three sons." There is no room for letting in the children of a deceased son, and we must do violence to the language of the testator before we can yield to [373] the claim of the appellants. But the clause which provides for the children of a deceased son, will admit of two constructions; and we ought, I think, to adopt that which will not bring it into direct and inevitable conflict with the other. In this way we shall give effect to the whole will, and in such a manner that all the parts will be in harmony with each other.

It is objected that the testator did not intend to die intestate, and that on the

construction I have adopted, events might happen in which he would have failed to make a final disposition of the whole of the Westchester property; that two of the sons might die within the term leaving issue, and then the third son might die within the term without issue, in which case his portion would go to the heirs of the testator. The testator has in fact so effectually disposed of the whole of the property, that in the events which have happened, the estate must forever retain the direction given to it by the will. Still it was possible that events should so fall out that one third of the property would go to the heirs at law of the testator. But this was only a remote possibility. The chances were, I think, a hundred to one against such a number and combination of events as would be necessary to work the consequence which has been mentioned. Before any thing can be made out of the objection that the testator might have failed to make a final disposition of the property, we must assume two things: first, that he foresaw this possible failure; and second, that he attempted to provide against it. Neither of these things can be proved. The number and combination of events on which the failure depended, would not be very likely to present themselves to the mind of any man who was anticipating the future; and if it were otherwise, it does not follow that the testator thought it important to guard against a possibility so remote.

Another argument of the appellants remains to be noticed. Had the testator used the same language in disposing of the fee at the end of the term, that he did in disposing of the rents and profits during the term, it may be con-[374] ceded that the appellants would be entitled to stand in the place of their father as to the portion of *Isaac.* But a change of language usually indicates a change of purpose; especially in a will, where we must suppose the party was aiming at precision, rather than elegance of diction. In that part of the will which disposes of the rents and profits, the testator first provides for survivorship between the sons, and then for the children of a son who should die during the term. In that part of the will which follows, and disposes of the estate, the testator has changed the order of these provisions, and has also adopted different language. If, on a reasonable interpretation, the words used in the two clauses are found to convey different meanings, the only just inference to be drawn from this transposition and change of phraseology is, that the testator intended that different consequences should follow in the two cases. The appellants can derive no aid, therefore, from going back to the clause disposing of rents and profits. The argument rather makes against them. This remark is applicable also to the argument which was built on the clauses relating to the real estate in New-York, and the personal property of the testator. In these several provisions the language of each one is different from all the others. It is impossible to maintain that the construction of one should govern the interpretation of another.

I am of opinion, *first,* that Isaac Starr Clason took an absolute fee at the end of the term, and consequently that his share has passed to the respondent as a purchaser; and *second,* if the right to an absolute fee depended on an actual division of the property, that the respondent is then entitled to the share of Isaac, as the only surviving son of the testator. If I am not wrong in both these positions, the decree of the chancellor is right, and should be affirmed.

Whereupon the decree of the chancellor was *unanimously* AFFIRMED.

